IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **NICHOLAS BARONE,** | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | NO. 23-2821 |
| **TRACEY L. GORDON,** *et al.*, | : | |
| *Defendants.* | : | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                                              **July 2, 2024**

Plaintiff Nicholas Barone has sued Tracey L. Gordon, the Register of Wills for the City of Philadelphia, as well as the City. Plaintiff alleges that he was wrongfully terminated for his refusal to contribute to Gordon's political campaign. The Amended Complaint alleges three causes of action: (1) violation of 42 U.S.C. § 1983 against Defendant Tracey Gordon, individually (Count I); (2) violation of 42 U.S.C. § 1983 against Defendant City of Philadelphia (Count II); and (3) wrongful discharge against all Defendants (Count III).

Defendants now move to dismiss (a) Plaintiff's § 1983 claim against the City of Philadelphia and (b) Plaintiff's wrongful termination claim against Gordon. For the following reasons, I will grant the Motion in part and deny it in part.

**I.      FACTUAL BACKGROUND**

**A.      Facts in the Complaint**

The following facts are set forth in the Amended Complaint:[1]

---

[1] In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).

On January 3, 2019, Plaintiff was hired by the City of Philadelphia as a records Clerk at the Archives Department for the Register of Wills for Philadelphia, Pennsylvania. The Philadelphia Register of Wills is an elected position, which serves as the head of the municipal department performing the functions of both the Register of Wills and the Clerk of the Orphan's Court for Philadelphia. Defendant Tracey L. Gordon was elected as the Philadelphia Register of Wills and assumed office on January 6, 2020. She launched an unsuccessful campaign for reelection, and, as such, her present term will expire in 2024. (Am. Compl. ¶¶ 7–9.)

During the relevant time period, Gordon was a policy-making official for the City of Philadelphia with respect to, among other things, the hiring, firing, and retention of City of Philadelphia employees working at the office of the Register of Wills. Plaintiff did not hold a high-ranking policy-making position. Rather, as a Records Clerk for the Archives Department, he was responsible for managing and arranging for the transportation of official archive records to and from the main office for the Register of Wills. (Id. ¶¶ 10–12.)

During his three years of employment as a Records Clerk for the Register of Wills, Plaintiff received consistently positive performance reviews, never had a disciplinary action or formal reprimand, and was given no notice of dissatisfactory job performance. In fact, due to Plaintiff's performance, Patrick Parkinson—a former Administrative Deputy for the Philadelphia Register of Wills—recommended to Gordon that Plaintiff be promoted from a part-time to a full-time employee. Once Gordon took office in January of 2020, she promoted Plaintiff to a full-time position, which entitled him to a wage, health insurance, and retirement benefits, including a pension. As Plaintiff continued to demonstrate exemplary performance, he was subsequently recommended for promotion. (Id. ¶¶ 13–16.)

The Amended Complaint alleges that, during his employment, Plaintiff and other employees of the Register of Wills office were repeatedly pressured to contribute and donate money to Gordon and her Political Action Committee ("PAC"). In November of 2021, Gordon notified all Register of Wills employees of a solicitation for financial contributions in the amount of $150 to Friends of Tracey

Gordon—the PAC organized on behalf of Gordon for her reelection to the position of Register of Wills. Plaintiff declined to financially to contribute to Gordon's campaign. (Id. ¶¶ 17–19.)

Approximately one week after Gordon sent her solicitation email, she contacted Thomas Campion, former Supervisor of the Archives Department for the Register of Wills, to ask why some of the Archives Department employees had failed to financially contribute to her campaign. Mr. Campion then advised Plaintiff that Gordon was unhappy with Plaintiff's decision to not donate. Plaintiff explained that he could not financially afford to make a $150 donation at that time. When Mr. Campion relayed Plaintiff's financial constraints to Gordon, Keith Harris, the Administrative Deputy for the Register of Wills, responded that Gordon would be satisfied with a $75 donation from Plaintiff. Mr. Campion relayed this to Plaintiff, but Plaintiff stated that he was unwilling and unable to contribute any dollar amount to the campaign. (Id. ¶¶ 20–24.)

On January 3, 2022, Plaintiff received a performance review from Mr. Campion, describing his work performance as having exceeded expectations. Four days later, on January 7, 2022, Plaintiff received a letter from the City of Philadelphia, Office of the Register of Wills, terminating his employment effective immediately. Plaintiff had no advance notice or warning that his employment may be terminated and was never given a reason or explanation for his sudden firing. (Id. ¶¶ 25–27.)

Plaintiff remained unemployed while he searched for and applied to new jobs. On June 28, 2022, he finally accepted an hourly-pay position with no health benefits or pension plan. Plaintiff alleges that he was one of several City of Philadelphia employees at the Register of Wills office who Gordon terminated after they refused to or stopped contributing financially to her reelection campaign. (Id. ¶¶ 29–30.)

Plaintiff also alleges that the City of Philadelphia and its Register of Wills had a long-standing policy, practice, and/or custom of requiring employees to contribute to the political campaign of the elected Register of Wills, and that this practice was entrenched for decades even before Gordon was

elected. He asserts that this policy, practice or custom of such ongoing conduct is confirmed by current complaints from other former employees, including:

- Thomas Campion was terminated and alleged, in a federal complaint, that there was "immense pressure forcing employees to donate to [Defendant Gordon's] campaign needs," and that Defendant Gordon "cultivated an environment that was discriminatory and retaliatory." Campion v. City of Philadelphia, No. 23-cv-2873 (E.D. Pa.).

- Former employee Patrick Parkinson claimed to have been terminated after refusing to support and contribute to Gordon. Parkinson v. Gordon, No. 23-cv-4004 (E.D. Pa.).

- Former employee Mark Wilson claimed that he was terminated after opposing mandatory contributions to Gordon's political campaign. He claimed that she "demanded and pressured every employee under her supervision to participate in making contributions to her campaign." Wilson v. Gordon, No. 23-cv-1814 (E.D. Pa.).

- Former employee Malik Boyd claimed that he was terminated because he "did not publicly support Gordon's reelection campaign or make any contributions to Gordon's reelection campaign." He asserted that Gordon "harassed, demeaned, and ultimately terminated the employment of Boyd" based on his refusal to contribute to her reelection campaign. Boyd v. Gordon, 23-cv-3640 (E.D. Pa.).

(Am. Compl. ¶¶ 31, 34–35.)

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief

when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

### III. DISCUSSION

Defendants contend that Count II (the § 1983 claim against the City of Philadelphia) and Count III (the wrongful termination claim against Defendant Gordon) must be dismissed for failure to state a claim upon which relief may be granted.

#### A. Section 1983 Claim Against Defendant City of Philadelphia

Defendants first challenge the Section 1983 claim—also known as a Monell claim—against Defendant City of Philadelphia. In order to recover against a municipality or municipal corporation under Section 1983, a plaintiff must plead that the entity itself caused an injury through the implementation of a policy, practice or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575 (3d Cir. 2003). Section 1983 imposes liability on a municipality where, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original).

The United States Court of Appeals for the Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; . . . second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; . . . third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted). The Third Circuit has further emphasized that, "[t]o satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009). A simple allegation that the plaintiff's rights were violated "due to the City's policy of ignoring First Amendment right[s]," or something similar, was insufficient. Id.

It is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality. A plaintiff must prove that the action in question, conducted pursuant to official municipal policy, caused his/her injury. Connick v. Thompson, 563 U.S. 51, 60–61 (2011). To establish the necessary causation, a plaintiff must demonstrate a "plausible nexus" or "affirmative link" between the municipality's custom and the specific deprivation of constitutional rights at issue. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)

Defendants here contend that Plaintiff has not alleged the establishment of any policy, practice, or custom, but rather, as pled, the actions complained of were "isolated incidents that are not sufficient to impose Monell liability." (Defs.' Mot. 10.) Defendants posit that "the mere allegation that other individuals have filed suit [claiming termination for failure to make contributions to the Register of Wills] is not indicative of the adoption of a policy or proclamation of an edict, as is necessary to establish a Monell claim." (Id.) Defendants go on to assert that, if Plaintiff is pursuing a Monell claim under a "course of conduct" theory, his claim must still fail because he "has not put forth evidence of knowledge of a pattern or prior incidents where Defendants failed to take action." (Id.)

The Amended Complaint need only set forth factual allegations that state a plausible claim for relief. Here, it sufficiently pleads that the City of Philadelphia had "a long-standing and widespread practice of terminating Register of Wills employees for refusing to contribute financially to the elected Register of Wills' reelection campaigns." (Am. Compl. ¶ 58.) The Amended Complaint further alleges that while the practice was not an "express" municipal law, it was "so widespread and permanent as to constitute a custom or usage with the force of the law" and it had been "entrenched for decades in the Register of Wills office" even before Defendant Gordon was elected. (Id. ¶¶ 35, 59). As a factual basis for these allegations, Plaintiff cites to lawsuits by four other former employees of the Register of Wills Office who claim to have been terminated for refusal to contribute to the political campaign of the elected Register of Wills. (Id. ¶ 31.) The Amended Complaint then asserts that because of the well-settled, longstanding, and widespread nature of the practice, the City of Philadelphia's policymakers had constructive and/or actual knowledge of the problem but did nothing to remedy it. (Id. ¶ 60.) Finally, Plaintiff claims that because Defendant Gordon's carried on this well-established practice "in a far more flagrant and punitive fashion," his termination was as a direct result of this policy and his refusal to financially contribute to the election campaign, all in violation of his First Amendment rights. (Id. ¶¶ 37, 39, 63.)

Such allegations are not unadorned, unsupported factual averments but rather state a plausible claim for relief. Liberally reading the allegations in the Amended Complaint in the light most favorable to Plaintiff, I find that he has adequately alleged a Monell claim against the City of Philadelphia.

### B. Wrongful Discharge Claim Against Defendant Gordon

Defendants also move to dismiss the common law wrongful discharge claim against Defendant Gordon under the doctrine of high public official immunity.[2] Defendants claim that because Gordon is

---

[2] Notably, the doctrine of high public official immunity does not apply to section 1983 claims, and Defendants do not seek to dismiss the §1983 claim against Gordon on immunity grounds. Defendants also do not seek to dismiss the wrongful termination claim against the City of Philadelphia.

a high public official as the Register of Wills, she maintains absolute immunity from any claims of wrongful termination.

"In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." Doe v. Franklin County, 174 A.3d 593, 603 (Pa. 2017); see also Kane v. Chester County Dept. of Children, Youth & Families, 10 F. Supp. 3d 671, 697 (E.D. Pa. 2014) ("Under Pennsylvania law, 'high public officials' are absolutely immune from tort liability stemming from action taken within the scope of their authority."). "This sweeping immunity is 'not for the benefit of high public officials, but for the benefit of the public.'" Lindner v. Mollan, 677 A.2d 1194, 1195 (Pa. 1996) (quotations omitted). At the motion to dismiss stage, a defendant can succeed in claiming immunity from suit "so long as there are sufficient facts for the court to complete the requisite analysis." Caristo v. Blairsville-Saltsburg Sch. Dist., 370 F. Supp. 3d 554, 562 (W.D. Pa. 2019). Absolute immunity applies if (1) the individual is determined to be a high public official, and (2) the statements made or actions taken were in the course of the official's duty or power and within the scope of his authority." Linder v. Mollan, 677 A.2d 1194, 1198–99 (Pa. 1996).

Under the first prong, whether a person is a high public official depends on "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Id. at 1198. Discovery is not always necessary to make such a determination because courts have already recognized that certain positions constitute such a high office. Caristo, 370 F. Supp. 3d at 562. Where there has been no clear judicial resolution, "[t]he determination of whether a particular public individual qualifies as a 'high-ranking public official' must be determined on a case-by-case basis." Feldman v. Hoffman, 107 A.3d 821, 827 (Pa. Cmwlth. 2014) (citing Lindner, 677 A.2d at 1198; see also Karash v. Machachek, No. 15-cv-28, 2016 WL 9777148, at *4 (W.D. Pa. Mar. 31, 2016). Repeatedly, elected and policy-making individuals have been deemed high-ranking public officials. See, e.g., Heller v. Fulare,

454 F.3d 174, 178, 179–180 (3d Cir. 2006) (township supervisor was a high public official); Durham v. McElynn, 772 A.2d 68, 70 (Pa. 2001) (assistant district attorney, even though not an elected position, was high public official); Feldman v. Hoffman, 107 A.3d 821, 828 (Pa. Commw. Ct. 2014) (officer of the coroner, as an elected County official, qualified as a high public official); Osiris Enters. v. Borough of Whitehall, 877 A.2d 560, 567 (Pa. Commw. Ct. 2005) (borough counsel members had the status of high public officials); Holt v. Northwest Pa. Training P'ship Consortium, Inc., 694 A.2d 1134. 1140 (Pa. Commw. 1997) (county commissioners were high public officials); Rok v. Flaherty, 527 A.2d 211, 213 (Pa. Commw. 1987) (City Controller, as an elected official, was high public official for purposes of absolute immunity even though many of the office's functions were largely ministerial in nature); Montgomery v. City of Philadelphia, 140 A.2d 100, 105 (Pa. 1958) (deputy commissioner of public property and City Architect were high public officials).

Here, although Defendants have not identified any judicial decision specifically addressing whether the Register of Wills is a high public official, such a designation is appropriate. The Amended Complaint alleges that Gordon was the Philadelphia Register of Wills, "an elected position, which serves as the head of the municipal department performing the functions of both the Register of Wills and the Clerk of the Orphan's Court for Philadelphia, Pennsylvania." (Am. Compl. ¶ 8.) The Amended Complaint further states that Gordon was "a policy-making official for the City of Philadelphia with respect to, among other things, the hiring, firing and retention of City of Philadelphia employees working at the office of the Register of Wills." (Id. ¶ 10.) Under the relevant Pennsylvania statute, "[w]ithin the county for which he has been elected or appointed, the register [of wills] shall have jurisdiction of the probate of wills, the grant of letters to a personal representative, and any other matter as provided by law." 20 Pa. Cons. Stat. § 901. The City of Philadelphia's official website describes the Register of Wills as is an elected position that issues marriage licenses and keeps marriage records, probates wills, issues letters of administration when a Philadelphia resident dies without a will, keeps records of wills, estate inventories, and related documents, acts as an agent for filing and paying inheritance taxes, and

9

maintains the dockets and records of the Orphan's Court.  https://www.phila.gov/departments/register-of-wills/.[3]  As these enumerated duties are all consistent with what has been deemed a high-ranking public official, I find that the first prong is met.

Having found that the Register of Wills is a "high public official," I must now determine whether the challenged statements and actions by Gordon were in the course of her official duty or power and within the scope of her authority.  Describing the scope of common law immunity, the Pennsylvania Supreme Court has stated, "absolute privilege . . . is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority . . ."  Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001).  "Though the doctrine was first articulated in the context of defamation lawsuits it has since expanded to encompass a variety of actions outside the context of defamation, including retaliatory discharge, economic interference, loss of consortium, invasion of privacy, and intentional infliction of emotional distress."  Judge v. Shikellamy Sch. Dist., 135 F. Supp. 3d 284, 302 (M.D. Pa. Sept. 28, 2015); see also Ballas v. City of Reading, No. 00-cv-2943, 2001 WL 73737, at *11 (E.D. Pa. Jan. 25, 2001) (holding city mayor has an absolute privilege against liability for state law claims of wrongful termination and loss of consortium).

Plaintiff contends that Gordon's actions of pressuring him and other employees to contribute to her Political Action Committee were not within the scope of the Register of Wills' official duties; rather they were motivated by her personal interest in being reelected.  In addition, Plaintiff contends that Defendant Gordon was not acting in the public interest or within the course of her normal duties as

---

[3] On a motion to dismiss, a court may take judicial notice of publicly available records, including official government websites.  See Sturgeon v. Pharmerica Corp., 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020).

Register of Wills when she fired Plaintiff for failing to contribute to her political campaign because State officials are not empowered to violate individuals' First Amendment rights.

Plaintiff's is argument misplaced on several grounds. Primarily, the immunity question asks whether the *challenged* actions fall within the scope of the high public official's duties. Plaintiff's argument that solicitation of funds is not within the scope of Gordon's duties fails to recognize that his claim challenges Gordon's alleged wrongful discharge/retaliation for Plaintiff's failure to contribute, and not her actions in initially soliciting those funds.

Moreover, the Amended Complaint specifically pleads that Defendant Gordon was a "policy-making official for the City of Philadelphia" with authority over "the hiring, firing and retention of City of Philadelphia employees working at the office of the Register of Wills." (Am. Compl. ¶ 10.) As such, it is apparent from the face of the Complaint that her actions in terminating Plaintiff's employment fell within the scope of her authority. Plaintiff's allegation that the termination was wrongfully motivated by Plaintiff's failure to contribute to Defendant Gordon's campaign does not obviate the immunity since high public official immunity extends even to actions motivated by malice, so long as "the actions are taken in the course of the official's duties or powers and within the scope of his authority . . ." Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001); see also Heller v. Fulare, 454 F.3d 174, 177 (3d Cir. 2006). To that end, high public official immunity has repeatedly been extended to wrongful or retaliatory termination claims. See, e.g., Ballas, 2001 WL 73737, at *11 (applying high public official immunity to common law claims against mayor for wrongful or retaliatory termination); Katzenmoyer v. City of Reading, Pa., 158 F. Supp. 2d 491, 496, 502 (E.D. Pa. 2001) (granting high public official immunity to mayor on claims of wrongful and retaliatory discharge where plaintiff alleges that he was terminated due to his vocal political support for mayor's opponents).

Given the absolute nature of high public official immunity, I find that Defendant Gordon is immune from Plaintiff's common law claim of wrongful discharge. Accordingly, I will grant the Motion to Dismiss this claim.

## IV. CONCLUSION

In light of the foregoing, I will grant Defendants' Motion to Dismiss Count III of Plaintiff's Amended Complaint as to Defendant Tracey L. Gordon only and will deny it in all other respects. An appropriate Order follows.