IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS BARONE | : CIVIL ACTON No. 2:23-cv-02821 |
| Plaintiff, | : |
| vs. | : |
| CITY OF PHILADELPHIA, ET AL. | : JURY TRIAL DEMANDED |
| Defendants. | : |

**DEFENDANTS, CITY OF PHILADELPHIA AND TRACEY GORDON'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Tracey L. Gordon, and the City of Philadelphia, by and through their undersigned counsel, Marshall Dennehey, P.C. respectfully submit this Statement of Undisputed Facts as follows:

**STATEMENT OF UNDISPUTED FACTS**

1. The Philadelphia Register of Wills ("ROW") is a state agency under the 1st Judicial District of Pennsylvania. *See*, *Register of Wills Term Report 2020 – 2024*, p. 4, attached hereto as **Exhibit A**.

2. The ROW is responsible for administering critical functions pertaining to wills, estates, and guardianships. Id.

3. Plaintiff, Nicholas Barone ("Plaintiff") was hired by Register of Wills Ronald Donatucci ("Donatucci") on January 3rd, 2019. *See*, *Plaintiff's Deposition Transcript*, 21:3-18, attached hereto as **Exhibit B**.

4. At all times, Plaintiff worked as a Records Clerk for the ROW office. *See*, *Plaintiff's Interrogatory Responses, No. 1*, attached hereto as **Exhibit C**.

1

5. As a Record Clerk, Plaintiff was responsible for the daily retrieval and storage of archived records upon request, maintaining system filing and organization, and adhering to established safety protocols among other things. *See*, *Record Clerk (Archives) Job Description*, attached hereto as **Exhibit D**.

6. As a Record Clerk, Plaintiff would get his assignments from Wayne Perry ("Perry) via email noting that boxes or files would need to be pulled or retrieved. **Exhibit B**, at 35:9-19; 36:1-6.

7. Generally, there was a regular delivery schedule that would take place daily around noon and then again at the end of the day. Id. at 36:23-25; 37:1-4.

8. In January 2020, Defendant, Tracey Gordon ("Gordon") started a four year term as the Register of Wills. *Tracey Gordon Deposition Transcript*, 44:16-22, attached hereto as **Exhibit E**.

9. After Gordon was elected, Plaintiff's responsibilities increased by way of picking up files and putting them away. **Exhibit B**, at 44:11-25; 45:1-16.

10. As the Register of Wills, Gordon was responsible for creating policies and had the ultimate authority to discipline and terminate employees. **Exhibit E**, at 50:1-22.

11. Gordon did not report to the Mayor of Philadelphia or Philadelphia's City Council. Id. at 48:25; 49:1-4.

12. However, the ROW office derives its powers from the State of Pennsylvania, it's finances are just budgeted through the City of Philadelphia with its budgets being submitted to Philadelphia's Finance Department. Id. at 45:23-25; 46:1-4; 48:22-24.

13. As Register of Wills, Gordon maintained a policy regarding employees engaging in political activity. *See*, *Human Resources Memo dated December 6, 2022*, attached hereto as **Exhibit F**.

14. As part of the policy, employees were strictly prohibited from campaigning or soliciting campaign contributions while working. Id.

15. Gordon knew that the previous Register of Wills (Donatucci) held two fundraisers per year, so she held fundraisers consistent with how Donatucci did. **Exhibit E**, at 123:7-12.

16. At some point, Gordon hired Tom Campion ("Campion") as Plaintiff's supervisor. **Exhibit B,** at 41:23-24; 42:3-8.

17. During the course of Plaintiff's employment, Campion asked him (Plaintiff) if he wanted to donate to a lunch fundraiser that Gordon was having. Id. at 56:13-25.

18. The cost of the fundraiser was $125, to which Plaintiff agreed to donate. Id. at 58:7-18; 62:15-18.

19. The fundraiser likely took place in 2021. Id. at 65:20-25; 66:1-12.

20. Prior to that, Plaintiff never donated to an elected official. Id. at 59:13-15.

21. Plaintiff did not know if other employees donated to the fundraiser. Id. at 63:1-17.

22. Plaintiff did not donate to Gordon's campaign other than the initial lunch fundraiser, although he was asked to contribute other times. Id. at 64:15; 65:1-7.

23. The next time that Plaintiff would have been asked to donate was near the end of 2021. Id. at 66:13-17.

24. Campion asked Plaintiff and other employees if they wanted to donate to Gordon's campaign, to which Plaintiff responded no. Id. at 66:13-25; 67:1-17.

25. In response, Campion advised Plaintiff that he should contribute because it was for Gordon and "they were really, like breaking his balls." Id. at 68:14-21.

26. Later that same day, Campion told Plaintiff that Keith Harris ("Harris") was really pushing for donations. **Exhibit B**, at 70:12-18.

27. Plaintiff again responded that he would not make a donation. Id. at 71:14-19.

28. The following day, Campion asked Plaintiff again about making a donation, to which Plaintiff declined. Id. at 72:25; 73:1-12.

29. The discussions with Campion occurred in November of 2021. After that, there were not any other requests for Plaintiff to contribute. Id. at 74:13-24.

30. Other than Campion, no one ever directly solicited Plaintiff to donate to Gordon's campaign. Id. at 74:5-8.

31. Throughout Plaintiff's employment, Gordon received reports that Plaintiff and the Archives Unit were not doing the work that was expected. **Exhibit E**, at 115:3-6.

32. Gordon was deposed and testified:

> Q: There's documentation that Nick Barone wasn't doing work?
>
> A: Archives, including Nick Barone, were not doing the work.
>
> Q: So - -
>
> A: That's why - - that's why they - - that's why we let them go. It wasn't - - it had nothing with campaigning. First of all, I didn't even know they didn't contribute. I never knew. I never asked, you know. It's plenty of people that didn't contribute still working there right now, why didn't they get terminated. They were terminated because they didn't - - they had performance issues.
>
> …

> Q: That was not – 0 the attitude he gave you the one time, that was not one of the bases for you firing him?
>
> A: No, no. I fired him, again, because he refused to do his work.

Id. at 115:3-15; 116:10-14.

33. Plaintiff was terminated on January 7, 2022. *See*, *Plaintiff Termination Letter*, attached hereto as **Exhibit G**.

34. Plaintiff was contacted by Charmaine Collins ("Collins") and advised that she was instructed to terminate him. **Exhibit B**, at 75:11-22.

35. Prior to his termination, Plaintiff was not advised of any issues with his job performance. Id. at 78:5-8.

36. Plaintiff's most recent performance was completed by Campion on December 22, 2021 and noted that Plaintiff's performance met expectations. *See*, *Performance Evaluation*, attached hereto as **Exhibit H**.

37. However, prior to Plaintiff's termination, Campion complained about his (Plaintiff's) performance. **Exhibit E**, at 26:6-14; 117:10-18. .

38. Following Plaintiff's termination, he did not contact anyone at the ROW office or follow-up with anyone. **Exhibit B**, at 82:15-25; 83:1-7.

39. At most, Plaintiff contacted Collins and asked about any outstanding vacation and sick time. Id. at 89:2-6.

40. Charmaine Collins worked for Gordon as the Human Resource Deputy. *See*, *Charmaine Collins Deposition Transcript*, attached hereto as **Exhibit I**.

41. Although Gordon was the final decision maker, she sought input from her senior staff regarding terminations. Id. at 13:2-5.

42. Collins recalled receiving text messages soliciting her to contribute to Gordon's campaign. Id. at 41:13-24.

43. Other employees were also asked to contribute. Id. at 42:1-5.

44. Keasha Trawick and Keith Harris ("Harris") usually approached employees to solicit a campaign contribution. Id. at 42:10-21.

45. At some point, Harris voiced a concern to Collins about being asked to solicit campaign contributions. Id. at 44:6-10.

46. As the Deputy of HR, Collins became aware of operational issues in the Archives Unit where Plaintiff worked. Id. at 71:3-20.

47. The issues stemmed from the timeliness of file deliveries. Id.

48. Prior to Plaintiff's termination, Gordon contacted Collins and advised her "Nick's last day is tomorrow. Get it done. And that's my final decision. And don't ask me any questions." Id. at 76:2-5.

49. Collins never learned directly why Plaintiff was fired. Id. at 78:15-24.

50. Harris previously worked for Gordon as her Special Assistant. *See*, *Keith Harris Deposition Transcript*, 8:25; 9:1-3, attached hereto as **Exhibit J**.

51. Harris was aware of Gordon disciplining Plaintiff and the Archives department prior to his termination due to inefficient productivity. Id. at 11:8-19.

52. Plaintiff expressed to Harris that he felt pressured to contribute to Gordon's campaign. Id. at 13:24-25; 14:1-6.

53. However, Harris never saw a list or found out if Plaintiff actually donated to Gordon's campaign. Id. at 14:8-16.

54. Emilio DiGregorio ("DiGregorio") previously worked for Gordon as the Deputy of Government Affairs. *See*, *Emilio DiGregorio Transcript*, 6:22-25; 7:1, attached hereto as **Exhibit K**.

55. DiGregorio was aware that Gordon held "a couple" fundraisers periodically throughout the years. Id. at 15-23.

56. DiGregorio became aware of issues in the Archives unit pertaining to the workflow. Id. at 27:1-25; 28:1-25; 29:1-4.

57. Throughout Plaintiff's employment, the ROW office maintained an "At-Will" employment policy which provided that "[a]s an employee of the Philadelphia Register of Wills [employment] is at-will. This means [] employment is for an indefinite period and it is subject to termination by you or the Philadelphia Register of Wills, with or without cause, with or without notice, at any time." *Register of Wills Employee Handbook*, p. 4, attached hereto as **Exhibit L**.

58. Following Plaintiff's termination, he filed the instant Complaint in the United States District Court for the Eastern District of Pennsylvania on July 25, 2023. *See*, ECF 1.

59. On December 6, 2023, Plaintiff filed an Amended Complaint. *See*, ECF 18.

60. As part of the Amended Complaint, Plaintiff alleged that Defendant Gordon pressured ROW employees to contribute to her reelection campaign. Id. at ¶17.

61. Plaintiff further alleged that in November 2021, Defendant Gordon solicited all ROW employees for a $150 contribution to her reelection campaign. Id. at ¶18.

62. Plaintiff claimed that he declined to contribute to Gordon's campaign and thereafter his supervisor, Thomas Campion ("Campion") was contacted seeking an explanation as to why some employees did not contribute. Id. at ¶¶19-20.

63. Plaintiff claimed that Campion advised him (Plaintiff) that Gordon was unhappy with the decision not to contribute to the reelection campaign. Id. at ¶21.

64. Plaintiff then alleged that he was terminated on January 7, 2022, solely on the basis of his refusal to donate to Gordon's campaign. Id. at ¶¶26-28.

65. Plaintiff alleged that his termination, coupled with the termination of other ROW employees outlined an unconstitutional policy, practice and custom. Id. at ¶¶30-33, 39.

66. Additionally, Plaintiff claimed that the ROW office had a "long-standing" policy of soliciting campaign contributions from employees and terminating those that did not contribute. Id. at ¶35.

67. As evidence of the aforementioned allegation, Plaintiff claimed that it was well known among employees that their job security was contingent upon contributing to the ROW political campaigns. Id. at ¶38.

68. As part of the Amended Complaint, Plaintiff alleged three (3) claims. In Count I, Plaintiff alleged a claim of First Amendment Retaliation in violation of 42 U.S.C. §1983 against Defendant Gordon, individually. Id. at ¶¶43-56

69. In Count II, Plaintiff alleged a First Amendment *Monell* claim against Defendant City of Philadelphia. Id. at ¶¶57-64.

70. Last, Plaintiff asserted a claim of Wrongful Termination against both Defendants. Id. at ¶¶65-75.

71. On December 21, 2023, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint based on the following: (1) Plaintiff failed to sufficiently allege a *Monell* violation against Defendant City of Philadelphia in Count II; and (2) Defendant Gordon is shielded from

any claims of Wrongful Termination as asserted in Count III based on the doctrine of High Public Official Immunity. *See*, ECF 19.

72. On July 7, 2024, an Order was issued, partially granting Defendants' Motion to Dismiss. ECF 26.

73. As part of the Order, Plaintiff's claims of Wrongful Termination against Defendant Gordon were dismissed. Id.

                                                      **MARSHALL DENNEHEY, P.C.**

BY: _____
JOHN P. GONZALES, ESQ.
JAHLEE J. HATCHETT, ESQ.
Attorney ID No(s): 71265 / 313604
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2871 Fax (215) 575-0856
Email: jpgonzales@mdwcg.com /
jjhatchett@mdwcg.com
*Attorneys for Defendants*

DATE: April 7, 2025

| Statement of Undisputed Facts Exhibit List ||
|:---:|:---:|
| **Exhibit** | **Description** |
| A | Register of Wills Term Report 2020 – 2024 |
| B | Plaintiff's Deposition Transcript |
| C | Plaintiff's Interrogatory Responses |
| D | Records Clerk Job Description |
| E | Tracey Gordon Deposition Transcript |
| F | Human Resource Memo dated December 6, 2022 |
| G | Termination Letter dated January 7, 2022 |
| H | Performance Evaluation |
| I | Charmaine Collins Deposition Transcript |
| J | Keith Harris Deposition Transcript |
| K | Emilio DiGregorio Deposition Transcript |
| L | Register of Wills Employee Handbook |