IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NICHOLAS BARONE | : | CIVIL ACTON No. 2:23-cv-02821 |
|---|---|---|
| Plaintiff, | : | |
| vs. | : | |
| CITY OF PHILADELPHIA, ET AL. | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, CITY OF PHILADELPHIA AND TRACEY L. GORDON'S MOTION FOR SUMMARY JUDGMENT**

I. **INTRODUCTION**

Defendants, City of Philadelphia and Tracey L. Gordon, by and through the undersigned counsel, Marshall Dennehey, P.C., hereby file this Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

II. **FACTUAL BACKGROUND**

Defendants incorporate by reference their Statement of Undisputed facts as if same were fully set forth herein at length. Subject to and without waiving incorporation of the Statement of Undisputed Facts, Defendants submit that this matter arises from the termination of Plaintiff, Nicholas Barone ("Plaintiff"), from his position of Records Clerk in the Archives Unit with the Register of Wills Office ("ROW"). The Register of Wills is an elected position for a "row" office in the City of Philadelphia. Plaintiff was hired as a Records Clerk in January 2019 by former Register Ronald Donatucci ("Donatucci"). As a Records Clerk, Plaintiff was primarily responsible for physically retrieving, delivering and storing files. Donatucci was defeated by Defendant Tracey

Gordon ("Defendant Gordon") for the position of Register of Wills and she assumed office in January 2020.

Upon assuming office, Defendant Gordon learned that Donatucci previously held several fundraisers wherein employees of the ROW were solicited for campaign contributions. Defendant Gordon also held fundraisers wherein employees, including Plaintiff, were solicited for campaign contributions. Plaintiff contributed to Defendant Gordon's campaign once throughout her term as the Register. The donation came by way of a one-time $125 purchase for a luncheon that occurred in the ROW building, located in City Hall. Thereafter, Plaintiff declined to contribute to Defendant Gordon's campaign, although he was never contacted by her directly and he never spoke to her about campaign contributions. Defendant Gordon occasionally had other employees (Keasha Trawick and/or Keith Harris) interact with employees regarding voluntary campaign contributions. The last request for Plaintiff to contribute to Defendant Gordon's campaign occurred in November 2021, to which he declined to contribute.

During Defendant Gordon's term, she was made aware of workflow and performance issues in the Archives Unit, specifically related to Plaintiff's performance. In fact, Plaintiff's then-supervisor previously complained to Defendant Gordon about workflow issues and Plaintiff's refusal to retrieve and deliver necessary files. The overall performance of the Archives Unit, including Plaintiff, caused a severe workflow issue that impeded productivity in the ROW office. Based on that, Defendant Gordon consulted her administrative staff and made the decision to terminate Plaintiff in January 2022.

Now, Plaintiff brings the instant lawsuit alleging First Amendment Retaliation in violation of 42 U.S.C. §1983 (against Defendant Gordon, individually) (Count I); First Amendment *Monell* violations (against Defendant, City of Philadelphia) (Count II); and Wrongful Termination (against

Defendant, City of Philadelphia). However, based on the record, Plaintiff's claims should be dismissed in their entirety.

### III. LEGAL ARGUMENT

#### a. Standard of Review

"[S]ummary judgment is proper when 'the movant shows that there is no *genuine dispute* as to any *material fact* and the movant is entitled to judgment as a matter of law.'" Peroza-Benitez v. Smith, 994 F.3d 157, 164 (3d Cir. 2021) (citing FED. R. CIV. P. 56(a) (emphasis added)). "Material facts" are those which "might affect the outcome of the suit under the governing law[,]" and a dispute over such facts is "genuine" only when "a reasonable jury could return a verdict for the nonmoving party." Id. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case." Clark v. Mod. Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993) (internal citation omitted).

Indeed, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only if* there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing FED. R. CIV. P. 56(c) (emphasis added)). And even then, the non-movant is entitled only to *reasonable inferences* drawn from the record. *See* Harvard v. Cesnalis, 973 F.3d 190, 199 (3d Cir. 2020) (citation omitted); *see also* United States v. Rowe, 919 F.3d 752, 759 (3d Cir. 2019) (explaining a deduction from the record "must bear a logical or convincing connection to established fact" (citation omitted)).

Summary judgment operates pursuant to a burden-shifting framework. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When a movant shows the nonexistence of a genuine dispute of material fact, and supports their assertion with specific citations to the record, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. The non-movant "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. Though, "the mere existence of a scintilla of evidence favoring the non-moving party will not prevent summary judgment[,]" SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 204 (3d Cir. 2022), and neither will "concerns regarding the credibility of witnesses[.]" Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 130 (3d Cir. 1998). The Third Circuit is unequivocally clear: "an opponent [of summary judgment] may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). But where the non-movant's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### b. **Plaintiff's First Amendment Retaliation Claim Fails As A Matter of Law**

In order to prevail on a § 1983 First Amendment retaliation claim, the plaintiff must prove that (1) he engaged in "constitutionally protected conduct," (2) the defendant engaged in a "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and (3) a "casual link [existed] between the constitutionally protected conduct and the retaliatory action. *See* Palardy v. Township of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018); Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006).

4

The First Amendment protects public employee speech if: (1) the employee spoke as a citizen rather than an employee; (2) the speech involved a matter of public concern; and (3) the public employer lacked an adequate justification for burdening that speech under the balancing test adopted in Pickering v. Board of Education, 391 U.S. 563 (1968). *See* Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 987 (3d Cir. 2014); Young v. Township of Irvington, 629 F. App'x 352, 357 (3d Cir. 2015). Under Pickering, a public employee's speech as a citizen on a matter of public concern is protected unless the employer's interests in restricting the speech outweigh the employee's and the public's interest in that speech. *See* Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 472 (3d Cir. 2015). However, the Third Circuit has held that personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest are matters reflecting an employee's self-interest and should not be construed as protected speech. *See* Palardy v. Twp. Of Millburn, 906 F.3d 76, 83 (3d Cir. 2018); *see also* Rossiter v. City of Philadelphia, No. CIV.A. 13-3429, 2014 WL 1034326 (E.D. Pa. Mar. 17, 2014) (finding that an employees complaint about his employment/employer was not protected speech).

To establish a causal connection, a plaintiff must prove (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. Lauren v. DeFlaminis, 480 F.3d, 259, 267 (3d Cir. 2007) (internal quotations and citations omitted). In the absence of that proof, a plaintiff must show that the finder of fact should infer causation. Id. Temporal proximity, without more may create an inference of causation if the timing is unusually suggestive. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

"For temporal proximity alone to establish causation, the time difference must be so short as to be unusually suggestive of retaliatory motive." Estate of Smith v. Marasco, 318 F.3d 497,

5

512 (3d Cir. 2003). "While the Third Circuit has not explicitly defined the closeness in time required for temporal proximity, it has held that two days is sufficient to establish causation on its own, while ten days is only sufficient when accompanied by other evidence of retaliation. *See* Farrell v. Planters Lifesavers Co., 206 F.3d 279 n. 5 (3d Cir. 2000). One cannot rely on speculative claims of retaliation to establish the necessary causal link. *See* Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997). To prevail at summary judgment, an employer must "present evidence such that no reasonable juror could conclude that the protected activity was the but-for cause of the termination." Hill v. City of Scranton, 411 F.3d 118, 126 n.11 (3d Cir. 2005).

Here, Defendants contend Plaintiff did not engage in constitutionally protected speech but instead engaged in the self-interested behavior that the Third Circuit delineated as non-protected speech. Even assuming that Plaintiff engaged in protected speech, Plaintiff's claims of First Amendment retaliation fail as Plaintiff has not established a temporal proximity between the speech at issue and his termination. The record indicates that Plaintiff was solicited to contribute to Defendant Gordon's campaign sometime in November 2021, without any additional specificity. **Exhibit B**, at 74:13-24. However, Plaintiff stated in no uncertain terms that following the request in November, he was not solicited again. Id. Thereafter, Plaintiff was terminated in January 2022. Although the Third Circuit has not carved out a bright line rule regarding temporal proximity, Defendants contend that at there was at least a thirty (30) day gap between Plaintiff's alleged protected speech and his termination. Defendants submit that the passage of such an extended period of time negates any inference that Plaintiff's termination was unusually suggestive in comparison to the alleged free speech.

Additionally, Defendants acknowledge that the test of temporal proximity may require the finder of fact to look at the record as a whole. Here, Defendants invite an inspection of the record

6

as a whole. A review of such reveals that Plaintiff remained gainfully employed for years under Defendant Gordon, despite Plaintiff's own admission that he made one campaign contribution. Based on the foregoing, Defendants submit that Plaintiff did not engage in protected speech. To the extent that he did, Plaintiff failed to establish a temporal proximity between the protected speech and his termination.

      **i. Defendant Had a Legitimate Non-Retaliatory Reason for Terminating Plaintiff**

Under the standard set in Ambrose, *infra*, a defendant can defeat a retaliation claim by demonstrating that it would have taken the same action even if the plaintiff had not engaged in the protected activity. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). Here, Defendants have established that Plaintiff's performance was called into question by his supervisor and the Archives Unit as a whole suffered from severe workflow issues. The existence of this legitimate reason for termination severs any causal connection between Plaintiff's alleged protected conduct and his termination.

      **c. Plaintiff Failed to Establish That He Suffered A Constitutional Deprivation Pursuant to Section 1983**

A municipality or local government may be liable under Section 1983 if the governmental body itself deprives a person of their constitutional rights or causes such deprivation to occur. Monell v. Dept. of Soc. Servs. Of City of New York, 436 U.S. 658, 692 (1978). This type of Section 1983 claim is commonly known as a *Monell* claim and holds local governments responsible only for their own illegal acts. Connick v. Thompson, 563 U.S. 51 , 60 (2011). Liability may only be imposed upon local governments where the governmental body's "deliberate conduct" was the "moving force" behind the constitutional injury alleged. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997) (emphasis omitted). In order to establish a

*Monell* claim, a plaintiff must show a deprivation of his constitutional rights that was caused by state "action pursuant to official municipal policy" or custom. *Monell*, at 691. A policy may be shown when a final decision maker issues an official proclamation, directive, or standard course of action. *See* Wright v. City of Philadelphia, 685 Fed.Appx. 142, 146 (3d Cir. 2017) (citing Andrews v. City of Philadelphia, 895 F,2d 1469, 1480 (3d Cir. 1990)). A custom is a given course of conduct that stems from a final decision maker's acquiescence so that the course of conduct becomes a well-settled or longstanding practice. Id. at 146-47.

First and foremost, Plaintiff failed to establish a constitutional injury and thus, he cannot state a viable *Monell* claim against Defendants. *See* Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992). As fully discussed *supra*, Plaintiff failed to adduce sufficient evidence to show a violation of his First Amendment rights. As such, Plaintiff's *Monell* claim fails as a matter of law.

Second, assuming *arguendo,* that Plaintiff has established a constitutional deprivation, he has failed to present any evidence that Defendants' deliberate actions were the moving force behind his injury. Plaintiff alleges that Defendant Gordon maintained a custom, policy or practice of terminating employees that refused to donate to her political campaign. However, *Monell* liability requires proof of a persistent and widespread practice that becomes a custom or policy, as established in Andrews, *supra*. Here, Plaintiff has failed to identify any patterns of behavior or practices demonstrating a consistent and systematic approach establishing that individuals were terminated for their refusal to donate to her campaign. Instead, Plaintiff presents an isolated incident where he was the sole individual terminated for the alleged unconstitutional conduct.

Moreover, Plaintiff's reliance on this isolated incident is insufficient to establish a municipal custom or policy. The Third Circuit has consistently held that a single instance of alleged misconduct does not amount to a municipal policy or practice, as seen in Bennett v. City of

8

Philadelphia, 704 F.3d 368, 376 (3d Cir. 2013). The absence of evidence demonstrating that this incident is part of a broader, systemic issue means it cannot serve as the foundation for a *Monell* claim. To support such a claim, Plaintiff would need to show that Defendant Gordon's actions reflect a pattern of terminating employees for their refusal to donate to her campaign. Conversely, Plaintiff's would also have to establish which individuals contributed to her campaign versus those that did not.

Finally, even if Plaintiff were able to substantiate claims against Defendant Gordon, those actions do not constitute an official policy of Defendant, City of Philadelphia, nor were they deliberately authorized or ratified by Defendant, City of Philadelphia. Monell liability attaches only when a municipality is found to be the "moving force" behind the alleged constitutional violation through an officially sanctioned policy or a ratified decision made by a final policymaker. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. at 404. In this case, there is no evidence that Defendant Gordon's conduct was either authorized or ratified by the Defendant City of Philadelphia. Thus, her alleged actions cannot be imputed to Defendant City of Philadelphia, further undermining any claim for Monell liability.

    d. **Plaintiff Has Not Established A Wrongful Termination Claim**

Plaintiff alleges that he was wrongfully terminated, however, Plaintiff was an at-will employee. Under Pennsylvania law, an at-will employee may be terminated for any reason or no reason at all. Hershberger v. Jersey Shore Steel Co., 394 Pa.Super 363, 575 A.2d 944, 946 (1990). Here, Plaintiff was an at-will employee and was subject to termination for good cause, or no cause. Therefore, there is no material or disputed fact regarding Plaintiff's at-will employment status. As such, Plaintiff's Wrongful Termination claim should be dismissed.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant this Motion for Summary Judgment, with prejudice, and enter judgment in favor of Defendants, Tracey L. Gordon and the City of Philadelphia.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: _____
JOHN P. GONZALES, ESQ.
JAHLEE J. HATCHETT, ESQ.
Attorney ID No(s): 71265 / 313604
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2871 Fax (215) 575-0856
Email:  jpgonzales@mdwcg.com  /
jjhatchett@mdwcg.com
*Attorneys for Defendants*

DATE:  April 7, 2025