## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS BARONE, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 2:23-cv-02821 |
| | : | |
| TRACEY L. GORDON, individually, and | : | **JURY TRIAL DEMANDED** |
| CITY OF PHILADELPHIA, | : | |
| Defendants. | : | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF PHILADELPHIA AND TRACEY GORDON'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, by and through his undersigned counsel, hereby submits this Response in Opposition to Defendants City of Philadelphia and Tracey L. Gordon's Motion for Summary Judgment. For the reasons set forth in the accompanying Memorandum of Law, Plaintiff respectfully submits that Defendants' Motion should be denied in its entirety.

Respectfully submitted,

By: _____

**COHEN, PLACITELLA & ROTH, P.C.**
James P. Goslee, Esquire (ID: 203043)
jgoslee@cprlaw.com
Matthew A. Capacete, Esquire (ID: 330982)
mcapacete@cprlaw.com
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
215-567-3500
215-567-6019 (fax)
*Attorneys for Plaintiff*

By:    /s/ Daniel J. Savage, Esquire

**SAVAGE LAW, LLC**
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215-310-0510
215-977-1099 (fax)
dsavage@savage-law.com
*Attorney for Plaintiff*

Dated: April 21, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NICHOLAS BARONE, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 2:23-cv-02821 |
| | : | |
| TRACEY L. GORDON, individually, and | : | **JURY TRIAL DEMANDED** |
| CITY OF PHILADELPHIA, | : | |
| Defendants. | : | |

**MEMORADUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF PHILADELPHIA AND TRACEY GORDON'S MOTION FOR SUMMARY JUDGMENT**

## I.   FACTUAL BACKGROUND

Plaintiff incorporates and reiterates the Statement of Undisputed Facts set forth and attached to his Motion for Partial Summary Judgement at ECF Doc. 40-1. Additionally, Plaintiff incorporates his Response to Defendants' Statement of Undisputed Facts which has been attached hereto as Exhibit "A." Plaintiff further attaches hereto the Sworn Declarations of Keasha Trawick, Patrick Parkinson, and Thomas Campion. *See* Sworn Declarations attached hereto as Exhibits "B," "C," and "D," respectively. Finally, Plaintiff attaches Defendants Responses to Interrogatories as Exhibit "E."

## II.   LEGAL ARGUMENT

### A.   Standard of Review

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a); *Williams v. Hammer*, 2024 U.S. Dist. LEXIS 87318, *11-12 (E.D. Pa. May 14, 2024).

"Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Capitol Presort Servs., LLC v. XL Health Corp.*, 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the nonmoving party. *Id*.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Once the moving party satisfies its burden, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). Unsubstantiated arguments made in a non-moving party's briefs are not considered evidence of asserted facts. *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993). Moreover, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 241 (3d Cir. 1985) (citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)). The court must then resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).

To defeat summary judgment, the non-moving party may rely on circumstantial evidence and reasonable inferences arising from the evidence and "need not match, item for item, each piece of evidence proffered by the movant." *Petruzzi's IGA v. Darling-Delaware*, 998 F.2d 1224, 1230 (3d Cir. 1993). The evidence that the non-moving party presents may be either direct or circumstantial and need not be as great as a preponderance. *Galli v. New Jersey*

*Meadowlands Comm'n,* 490 F.3d 265, 270 (3d Cir. 2007).  That evidence needs only be more

than a scintilla.  *Id.* (quoting *Hugh v. Butler County Family YMCA,* 418 F.3d 265, 267 (3d Cir.

2005)).

      **B.**      **Plaintiff was Terminated in Retaliation for his Refusal to Financially Contribute to Defendant Gordon's Political Reelection Campaign in Violation of the First Amendment and For No Other Legitimate Reason**

The First Amendment protects an individual's right to free speech and political association.

U.S. Const. amend. 1; *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 268 (3d Cir. 2007).

Federal courts have held that under the First Amendment, public employers can in no way

condition employment on political affiliation or activity, including financial contributions. *See,

e.g.*, *Elrod v. Burns*, 427 U.S. 347, 355 (1976); *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454,

465 (3d Cir. 2015) (holding a public employer "may not discharge an employee on a basis that

infringes that employee's constitutionally protected interest in freedom of speech.") (quoting

*Rankin v. McPherso*n, 483 U.S. 378, 383 (1987)). A claim for a public employer's retaliatory

violation of a public employee's First Amendment rights is actionable under 42 U.S.C. § 1983.

*Galli*, 490 F.3d at 268.

In assessing a First Amendment retaliation claim, the Third Circuit applies "a well-

established three-step test to evaluate a public employee's claim of retaliation for engaging in

activity protected under the First Amendment." *E.g.*, *Hill v. City of Scranton*, 411 F.3d 118, 125

(3d Cir. 2005); *see also Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006). "First, the employee

must show that the activity is in fact protected." *Hill*, 411 F.3d at 125 (citing *Pickering v. Bd. of

Educ.*, 391 U.S. 563 (1968)). "Second, the employee must show that the protected activity 'was a

substantial factor in the alleged retaliatory action.'" *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. of

Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "Third, the employer may defeat the employee's claim

by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." *Id.*

       i.    *It is indisputable that Plaintiff's refusal to financially contribute to Defendant Gordon's political reelection campaign is constitutionally protected under the First Amendment*

To be protected under the First Amendment, speech by a public employee "must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *E.g. Connick v. Myers*, 461 U.S. 138, 142 (1983) (quoting *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)). In order to be protected by the First Amendment, the plaintiff's statement ordinarily must not be made pursuant to the plaintiff's job responsibilities as a public employee. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

However, in the Third Circuit, "any lawsuit brought by an employee against a public employer qualifies as a protected 'petition' under the First Amendment so long as it is not 'sham litigation.'" *Hill*, 411 F.3d at 126 (internal citations omitted). Moreover, it is well-established that a refusal to financially contribute to a public employer's campaign is a matter of public concern which is necessarily "protected conduct." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 273 (3d Cir. 2007). ("Finally, and most relevant here, we have suggested that the First Amendment protects an employee's failure to engage in any political activity whatsoever."). Even "[t]he threat of dismissal for failure to provide [] support [to a public employee's public employer] unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise." *Elrod v. Burns*, 427 U.S. 347, 359 (1976) (assessing constitutionally protected speech in the context of political patronage); *see also*, *Galli*, 490 F.3d at 273.

Here, Plaintiff's refusal to financially contribute to his public employer's political reelection campaign is indisputably protected speech. Plaintiff was a public employee, and Defendants were his public employers. Counts 1 and 2 of Plaintiff's Amended Complaint allege that Defendants violated Plaintiff's First Amendment right to refuse to contribute to or support Defendant Gordon's political reelection campaign. Furthermore, these allegations have survived a Motion to Dismiss and are well-supported by the evidence and testimony discovered in this case. Therefore, they are not a "sham," and are therefore, protected under the well-established law of the Supreme Court of the United States and the Third Circuit. *E.g.*, *Elrod*, 427 U.S. at 359; *Hill*, 411 F.3d at 125-26; *Galli*, 490 F.3d at 271-73.

Therefore, the only question before the Court in this matter is whether Plaintiff's refusal to financially contribute to Defendant Gordon's political reelection campaign was (1) a job responsibility of a Records Clerk within the Archives department of the Register of Wills Office of Philadelphia, and (2) whether Plaintiff's right to express himself right to refuse to financially contribute is outweighed by any injury his refusal could cause to the interest of the City of Philadelphia, as an employer, "in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 142 (1983) (quoting *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)). The answer to each of these questions is a resounding "no."

Plaintiff's job responsibilities are undisputed here and indeed were included by Defendants in their Statement of Undisputed Facts. *See* ECF Doc. 41-2 at ¶¶ 4-5; *see also* Records Clerk Job Description at ECF Doc. 41-8. Indeed, Defendants' Statement of Undisputed Facts concedes that at the Register of Wills Office, "employees were strictly prohibited from campaigning or soliciting campaign contributions while working." *See* ECF Doc. 41-2 at ¶¶ 13-14. While Plaintiff disputes

the timing and circumstances of this policy, based on Defendants' own admission, Plaintiff's position was not a political position and his interest in refusing to financially contribute to Defendant Gordon's political reelection campaign substantially outweighed any unlikely public interest related thereto, and in no way hindered the efficiency of the public services offered by the Philadelphia Register of Wills Office.

ii.    *Plaintiff's refusal to financially contribute to Defendant Gordon's political reelection campaign was a substantial and motivating factor in the retaliatory termination by Defendants, who fail to establish that they would have otherwise taken the same action*

Once a plaintiff establishes a *prima facie* showing of constitutionally protected speech, the plaintiff must show that the protected activity was a "substantial factor" or "motivating factor" in the retaliatory action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). The plaintiff must show a "causal link" between the protected speech and the adverse employment action. *See, e.g., Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003); *see also Azzaro v. County of Allegheny*, 110 F.3d 968, 981 (3d Cir. 1997) (reversing summary judgment dismissing First Amendment retaliation claim, because there existed "a material dispute of fact as to whether [plaintiff's] reports were a motivating factor in the discharge decision").

"[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002). If the plaintiff shows that the decisionmaker was aware of the protected conduct, then the plaintiff may use the temporal proximity between that knowledge and the adverse employment action to argue causation. "[A] suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation," *Thomas*, 351 F.3d at 114, but "[e]ven if timing alone could ever be sufficient to establish a causal link, [...]

the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)). However, there is no bright line rule for what constitutes temporal proximity, and in fact, such a question should be determined by the factfinder. *E.g.*, *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005); *San Filippo v. Bongiovanni*, 30 F.3d 424, 444 (3d Cir. 1994). Moreover, where a "plaintiff can show that the decisionmaker lacked a pretext on which to dismiss the plaintiff until shortly before the time of dismissal[,]" the causal inference upon which the factfinder may determine "substantial factor" would be "particularly strong." *E.g.*, *San Filippo*, 30 F.3d at 444 (3d Cir. 1994).

Moreover, although timing and ongoing antagonism have often been the basis for the causal link, the Third Circuit has clearly and consistently allowed plaintiffs to substantiate a causal connection for purposes of the *prima facie* case through all types of circumstantial evidence that support the inference. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-281 (3d Cir. 2000). For example, a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee. *See Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 73 (3d Cir. 1986); *see also EEOC v. L.B. Foster Co.*, 123 F.3d 746, 753-54 (3d Cir. 1997), *cert. denied*, 522 U.S. 1147 (1998).

In *Waddell*, the Third Circuit noted that the District Court could "appropriately" have taken inconsistent explanations into account in finding the causation necessary to satisfy the *prima facie* case. *Waddell*, 799 F.2d at 73 ("The district court noted the inconsistency in Small Tube's explanations of its refusal to rehire and could appropriately have taken that into account."). In *L.B. Foster Co.*, the plaintiff established a *prima facie* case of retaliation based on temporal proximity between the events plus inconsistencies in the defendant's testimony, certain conduct towards

others, and refusals to provide a reference for the plaintiff. *L.B. Foster Co.*, 123 F.3d at 753-55 (citing *Waddell*, 799 F.2d 69 at 73).

Here, there is temporal proximity between Plaintiff's constitutionally protected speech – *i.e.* his refusal to financially contribute to Defendant Gordon's political reelection campaign – and Defendants' violation of his First Amendment right (his termination). The record is undisputed that Plaintiff refused to financially contribute to Defendant Gordon's campaign "in 2021 [] near the end of the year." *See* Defendants' Statement of Undisputed Facts at ECF Doc. 41-2 at ¶ 23. It is also undisputed that Mr. Barone was fired on January 7, 2022. *Id.* at ¶ 33. Furthermore, Keasha Trawick, Defendant Gordon's personal friend, reelection campaign treasurer, and Executive Administrator for the Register of Wills in 2021-2022, has issued a Sworn Declaration which offers direct insight into Defendant Gordon's knowledge and state of mind at the time of Plaintiff's termination:

> 8.    Tracey Gordon specifically asked me whether Nicholas Barone, a records clerk in the archives department of the Register of Wills, had recently donated to her campaign and I told her he did not.
>
> […]
>
> 11.    In January 2022, shortly after I informed her that Mr. Barone had not donated to her campaign, Tracey Gordon directed that Mr. Barone be terminated.
>
> 12.    There was no legitimate basis for his termination because he performed his job well and I never heard anyone in the Register of Wills identify any concerns with Mr. Barone or his job performance or professionalism.

*See* Sworn Declaration of Keasha Trawick at Exhibit "B" at ¶¶ 8, 11, 12. Additionally, Patrick Parkinson was Defendant Gordon's Administrative Deputy during her time as Register of Wills. On December 2, 2024, Mr. Parkinson issued a Sworn Declaration stating, *inter alia*, that:

> 6.    In January of 2022, I became aware that Ms. Gordon fired Nicholas Barone for his refusal to contribute to her PAC. ***After Mr. Barone's***

> ***termination on January 7, 2022, I had subsequent conversations
> with Ms. Gordon's staff including Keith Harris, who informed me
> that Mr. Barone was terminated because he refused to contribute
> to her PAC***.

> 7.    Specifically, Nicholas Barone refused to contribute to a fundraiser
> she held in November 2021. Ms. Gordon was furious. She
> consistently would express that she gave Mr. Barone full-time
> employment and benefits, and she felt that Mr. Barone should
> reciprocate by donating to her PAC. ***After being urged multiple
> times to contribute to Ms. Gordon's PAC and Mr. Barone strongly
> refusing to donate, Ms. Gordon terminated Mr. Barone***.

*See* Sworn Declaration of Patrick Parkinson attached hereto as Exhibit "C" (emphasis added). In

addition to Ms. Trawick and Mr. Parkison's Sworn Declarations in this matter, Plaintiff supervisor,

Tom Campion, issued a Sworn Declaration in another related matter which described the

circumstances of Plaintiff's termination. *See* Sworn Declaration of Tom Campion attached hereto

as Exhibit "D." There, Mr. Campion swore, *inter alia*, that "Gordon personally expressed concerns

to me that Wilson and Barone were not contributing, demanding that she wanted 100%

participation." *Id.* at ¶ 5. As is clear from the Sworn Declarations, Defendants lacked a legitimate

basis for terminating Plaintiff, which may certainly be inferred by the direct evidence of temporal

proximity set forth above,

In addition to the temporal proximity, there is an abundance of circumstantial evidence

demonstrating that Plaintiff's refusal to contribute to Defendant Gordon's political reelection

campaign was a substantial and motivating factor for his termination, beginning with the many

inconsistent reasons Defendants have set forth for terminating Plaintiff.

At the outset of this litigation, Defendants answered Plaintiff's First Set of Interrogatories

on February 29, 2024[1]. *See* Defendants' 2/29/2024 Responses to Interrogatories attached hereto as

Exhibit "E." In their Responses, Defendants stated that "Plaintiff was terminated due to his poor

---

[1] 2024 was a leap year.

performance as a Records Clerk in the Office of the Register of Wills. Defendant Gordon made the decision to terminate Plaintiff based on the recommendation of Charmaine Collins and Emilio Di Gregorio due to Plaintiff's poor performance." *Id*. at 2. However, it is indisputable that Plaintiff's job performance met and exceeded expectations by all metrics. *See* Plaintiff's 1/3/22 Job Performance Evaluation at ECF Doc. 41-12; Collins Dep. at 60:2 – 63:20; DiGregorio Dep. at 68:14-23; Roseboro Dep. at 22:3 – 23:17; Harris Dep. at 26:25 – 27:4. Moreover, Defendants' allegation that Defendant Gordon terminated Plaintiff at the recommendation of Ms. Collins and Mr. DiGregorio is patently false and completely unsupported by the deposition testimony. When asked, Ms. Collins testified as follows:

> Q.    If Ms. Gordon said that you recommended she fire Nick, would that be incorrect?
>
> A.    That would be a lie.
>
> Q.    If she said you were involved with the decision to fire Nick, would that be a lie?
>
> A.    That would be a direct lie…

*See* Collins Dep. at 75:17-22. Similarly, when Mr. DiGregorio was asked about his "recommendation" to fire Mr. Barone, he testified:

> Q.    If asked, would you have recommended he be fired on January 7th, 2022?
>
> A.    I would say no, do not fire him.
>
> […]
>
> Q.    If Ms. Gordon testified that you recommended that she fire Nick Barone, would that be incorrect?
>
> A.    That would be incorrect.
>
> […]
>
> Q.    If Ms. Gordon testified that Nick Barone was fired at your recommendation, would that be incorrect?

10

> A.    That would be incorrect.

*See* DiGregorio Dep. at 66:8-24; 56:4-10. Indeed, Defendants have ostensibly abandoned this explanation entirely, now readily admitting that "Plaintiff was contacted by Charmaine Collins ("Collins") and advised that she was instructed to terminate him," that "[p]rior to Plaintiff's termination, Gordon contacted Collins and advised her 'Nick's last day is tomorrow. Get it done. And that's my final decision. And don't ask me any questions,'" and that "Collins never learned directly why Plaintiff was fired." *See* Defendants' Statement of Undisputed Facts at ECF Doc. 41-2 at ¶¶ 34, 48, 49.

    By the time of Defendant Gordon's deposition in November 2024, Defendants had come up with a new explanation for Plaintiff's termination. As such, when asked why she terminated Plaintiff at her deposition, Defendant Gordon testified as follows:

> Q.    Okay. Can you tell me why you fired Nick Barone?

> A.    Nick Barone refused to do a duty that was assigned to him and other things that was going on down at the -- in the Archives. And it was more or less, like, the final straw. I had gotten a report from one of the supervisors down there. And I don't recall which supervisor it was at the time. And they called to let me know that Nick Barone refused to make the deliveries that he was supposed to make to City Hall from Archives.

> [...]

> Q.    Okay. Do you recall the name of the supervisor?

> A.    I'm believing it was Tom Campion.

*See* Dep. of Defendant Gordon at 7:3-21. This new, inconsistent explanation was provided nine (9) months after Defendants' initial explanation was set forth in their Responses to Plaintiff's Interrogatories. Similarly, this was conspicuously alleged after Ms. Collins and Mr. DiGregorio disclaimed any involvement or "recommendation" relating to the decision to terminate Plaintiff. While it is obvious why Defendants would abandon their initial explanation for Plaintiff's

termination after being explicitly refuted by Ms. Collins and Mr. DiGregorio, Defendant Gordon's

invocation of Plaintiff's supervisor, Tom Campion, is similarly belied by the evidence of record

in this case. Indeed, as was presented to Defendant Gordon during her deposition, Tom Campion

signed a Sworn Declaration in the matter of *Wilson v. City of Philadelphia and Tracey Gordon*,

2:23-cv-01814[2], wherein Mr. Campion swore to the following:

3.    I was primarily supervised by Tracey Gordon (the elected Register of Wills). Two (2) of several people working in the Archives department under me were Mark Wilson ("Wilson") and Nicholas Barone ("Barone"). They were deemed Clerks (which is a broad job role/description).

4.    Both Wilson and Barone performed their jobs very well. They were well liked and worked very hard. They had no disciplinary concerns. But they were both terminated in or about mid-2022.

5.    I have formed the opinion and am 100% confident in my own opinion that Wilson and Barone were terminated for not making campaign contributions or donations to or for Gordon. Some examples of the bases of my opinion is as follows;

• There was continual and immense pressure from all levels of management that there must be 100% participation in contributing and donating to Gordon's campaign. It was almost as if securing donations from all employees a job duty of those working under Gordon.

• There were multiple fundraisers, and both Wilson and Barone were vocal that they would not donate to her campaign (with respect to financial contributions or purchasing tickets to events).

• ***Gordon personally expressed concerns to me that Wilson and Barone were not contributing, demanding that she wanted 100% participation***.

• ***Gordon expressed substantial hostility and frustration in my presence that Wilson and Barone were not participating in campaign donations and contributions***, even explaining that she gave them full-time employment and benefits and helped them (upon commencing in her elected role). She was very upset

---

[2] *Wilson v. Gordon, et al.* involved similar claims of First Amendment retaliatory termination.

they were not reciprocating by donating to her campaign and
they vocally opposed such donations and contributions.

[…]

7.    Based upon Gordon's expressed frustration, demands for 100%
participation in her ongoing campaign contributions from her employees,
and ***recent opposition to participation by Barone and Wilson in close
temporal proximity to their respective terminations*** - - I am personally
convinced they were terminated for not contributing and donating to
Gordon's campaign. Gordon was making sure they served as examples for
other employees and departments.

*See* Sworn Declaration of Tom Campion attached hereto as Exhibit "D" at ¶¶ 3-5, 7 (emphasis

added). As such, Defendant Gordon's final explanation is belied by indisputable evidence of

record.

The determination of whether Defendant Gordon's knowledge and decision to terminate

him is temporally proximate to Plaintiff's January 7, 2022 termination is a question for the trier of

fact. Based on the competent evidence of record, the jury may reasonably and "strongly" infer that

Plaintiff's refusal to financially contribute to Defendant Gordon's political reelection campaign

was a "substantial" or "motivating" factor in Defendants' constitutionally violative termination of

his public employment. *E.g.*, *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005); *San Filippo*

*v. Bongiovanni*, 30 F.3d 424, 444 (3d Cir. 1994). Therefore, as it pertains to Defendants' present

Motion, Plaintiff has sufficiently established that Defendant Gordon had knowledge of Plaintiff's

refusal to contribute to her political reelection campaign and that his refusal was a "substantial

factor" and "motivating factor" in the retaliatory termination that took place on January 6, 2022.

Plaintiff has established that Plaintiff's constitutionally protected speech and conduct was

a substantial and motivating factor in Defendants' termination. However, a public employer may

defeat a public employee's retaliation claim by demonstrating that the same adverse action would

have taken place in the absence of protected conduct. *Hill v. City of Scranton*, 411 F.3d 118, 125

(3d Cir. 2005). The defendant has the burden of proof on this third prong of the test. *See id.* at 126 n.11 ("[T]he defendant bears the burdens of proof and persuasion on the third prong."); *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 144 (3d Cir. 2000) (holding that same-decision assertion is an affirmative defense). In other words, "the defendant [], in proving 'same decision,' must prove that the protected conduct was *not* the but-for cause." *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000).

As set forth above, Defendants have utterly failed to establish a legitimate basis for Plaintiff's termination. Indeed, each of the inconsistent reasons Defendants have set forth have been undercut and belied by the competent evidence of record. While Plaintiff intends to demonstrate at trial that Defendants have **no** legitimate explanation for his termination, at the very least, there is a genuine issue of material fact that must be determined by the jury at trial.

### C.    It is Indisputable that Defendants are Liable for Plaintiff's Termination Under *Monell*[3]

42 U.S.C. § 1983 provides a cause of action for individuals against governmental organizations or officials who have violated their constitutional rights. "[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978) (overruling in relevant part *Monroe v. Pape*, 365 U.S. 167 (1961)). However, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Rather, a suit against a municipal policymaking official in her official capacity is treated as a suit against the municipality. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

---

[3] Plaintiff has moved for Partial Summary Judgment at ECF Doc. 40. Plaintiff maintains he is entitled to Partial Summary Judgment as to the issue of *Monell* liability for the reasons set forth in his Motion and incorporates those arguments here.

government as an entity is responsible under § 1983." *Id.* at 694; *see also A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 580 (3d Cir. 2004) (holding a suit against a municipal policymaking official in her official capacity is treated as a suit against the municipality). To recover against a municipality or municipal corporation under Section 1983, a plaintiff must prove that the entity itself caused an injury through the implementation of a policy, practice, or custom. *Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

There are several ways in which a municipality can cause a violation and thus incur liability, including, *inter alia*, (1) if its employee acted pursuant to a formal government policy, (2) a policy statement or decision that is officially made by the policy-making official in an area of the municipal government; or (3) a custom that is a widespread, well-settled practice that constitutes a standard operating procedure of that area of the municipal government. *E.g.*, *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Here, Defendants have officially admitted that "[a]s the Register of Wills, Gordon was responsible for creating policies and had the ultimate authority to discipline and terminate employees," and that "Gordon did not report to the Mayor of Philadelphia or Philadelphia's City Council." *See* Defendants' Statement of Undisputed Facts at ECF Doc. 41-2 at ¶¶ 10-11. Therefore, for the reasons set forth below and in Plaintiff's Motion for Partial Summary Judgment (ECF Doc. 40), there is no genuine issue of material fact that Defendant Gordon was a final decision and policy maker for the Philadelphia Register of Wills Office, whose individual conduct imports *Monell* liability onto the City of Philadelphia. Notwithstanding this clear path to *Monell*

liability, Plaintiff alternatively sets forth the bases for finding Defendant the City of Philadelphia is liable due to the long-standing custom of political patronage existing in the Register of Wills Office and upon which Defendant Gordon expanded.

       i.     <u>*It is undisputed that Defendant Gordon had final policy making authority as Register of Wills of Philadelphia County*</u>

The Supreme Court of the United States has long held that *Monell* liability applies to municipal governments based on a single decision by a municipal official who has final decision-making authority. *E.g.*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). The Third Circuit has accordingly adopted this theory of municipal liability. *E.g.*, *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) ("liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy") As such, where a government's final decision-maker adopts a particular course of action, the municipality may be responsible, and thus liable, for that policy regardless of "whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481. A deliberate choice by an individual government official constitutes government policy if the official has been granted final decision-making authority concerning the relevant area or issue. *See, e.g.*, *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). In this context, "municipal liability under Section 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483 (1986); *see also Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996).

In order to identify who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quoting *Andrews v. Philadelphia*, 895 F.2d 1469,

1481 (3d Cir. 1990)). Under § 1983, only the conduct of those officials whose decisions constrain the discretion of subordinates constitutes the acts of the municipality. *Id*. "[W]hether a particular official has 'final policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). "As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989); *see also McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997) ("This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law."); *McGreevy v. Stroup*, 413 F.3d 359, 369 (3d Cir. 2005) (analyzing Pennsylvania law and concluding that "[b]ecause the school superintendent is a final policymaker with regard to ratings, his ratings and/or those of the school principal constitute official government policy").

Here, Defendants have officially admitted that "As the Register of Wills, **Gordon was responsible for creating policies** and had the **ultimate authority** to discipline and terminate employees," and that "Gordon d**id not report to the Mayor of Philadelphia or Philadelphia's City Council**." *See* Defendants' Statement of Undisputed Facts at ECF Doc. 41-2 at ¶¶ 10-11. This is consistent with the testimony of every witness deposed in this case, including Defendant Gordon; her two Deputy Directors of Human Resources, Charmaine Collins and Sharif Roseboro; her Executive Assistant, Keith Harris; and Deputy of Governmental Affairs, Emilio DiGregorio.

Furthermore, in their Brief, Defendants set forth the wholly unfounded proposition that "proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing municipal policy." *See* ECF Doc. 42 at p. 9 (citing *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009). In support of this flawed assertion, Defendants cite a series of inapposite cases that deal with facts entirely different from those in this action and which arise under a different theory of *Monell* liability. In doing so, Defendants misrepresent and deceitfully ignore the well-established law of the Supreme Court of the United States and the Third Circuit.

In *Brown*, and the rest of the cases cited by Defendants, the actor who violated the plaintiff's constitutional rights, was **not** the final policy maker and was **not** acting pursuant to the final policy maker's orders. *Brown*, 586 F.3d at 292. Rather, the claims in *Brown* related to a single instance of misconduct by a single police officer who was legally incapable of creating department policy, and whose conduct is not the result of any deficient departmental policy. *Id.* at 292-93. Similarly, in *Losch v. Parkesburg*, the Third Circuit dealt with a singular arrest executed without probable cause by individual officers without policy making authority which were not tied to any policy whatsoever. 736 F.2d 903, 911 (3d Cir. 1984) ("There is no evidence here of any policy or practice of the Borough of Parkesburg operating against the appellant."). Finally, in *Thomas v. Cumberland County*, the Third Circuit dealt with the issue of whether a municipality's ***absence of a policy*** to provide pre-service training or supervision of individual corrections officers amounted to deliberate indifference. 749 F.3d 217, 223 (3d Cir. 2014). As such, the Court held that where a plaintiff alleges that their constitutional rights were violated ***because of the absence of a municipal policy***, Courts should consider predictability and foreseeability of multiple violations. *Id.* at 223.

This case does not involve a singular incident by a run of the mill government employee, or the absence of a policy. Rather, this case involves Defendant Gordon, who Defendants have admitted was the final policy maker for the Philadelphia Register of Wills Office. Moreover, all of the evidence of record supports a finding that she was indeed the final policy maker for the Municipality/City of Philadelphia's Register of Wills Office. Therefore, her constitutionally violative termination of Plaintiff is sufficient to impute *Monell* liability onto Defendant the City of Philadelphia in this matter.

ii.   *Defendant Gordon had knowledge of, acquiesced to, and expanded upon a well-settled custom in the Philadelphia Register of Wills Office*

*Monell* liability may be found where it is established that a final policymaker or decisionmaker (1) had knowledge of a well-settled custom, and (2) acquiesced to that custom. *E.g.*, *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) "Custom […] can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence."), *cert. denied*, 492 U.S. 919 (1989). "It is for the jury to determine whether their [policymakers'] decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur . . . or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity." *Bielevicz*, 915 F.2d at 850 (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989).

Here, while there is indisputable evidence that Defendant Gordon had the power to establish, and in fact affirmatively established, the policy at issue, there is also sufficient evidence that she had knowledge of a preexisting political patronage policy, acquiesced thereto, and

expanded upon that preexisting policy. Defendants' Statement of Undisputed Facts states that "Gordon knew that the previous Register of Wills (Donatucci) held two fundraisers per year, so she held fundraisers consistent with how Donatucci did." *See* ECF Doc. 41-2 at ¶ 15. Defendant Gordon testified consistently with this during her deposition:

> Q.    […] Mr. Donatucci was the previous Register?
>
> A.    Yes.
>
> Q.    And I think you had testified that, it's your understanding that he would expect his – the employees of the Register office to donate to his campaign?
>
> A.    **Well, they just had two fundraisers a year and that's what I adopted.**

*See* Dep. of Defendant Gordon at ECF Doc. 41-9 at 123:3-12.

Defendants' own admissions are further corroborated by those who worked under both Mr. Donatucci's and Defendant Gordon's administrations. Defendant Gordon's former Administrative Deputy Patrick Parkinson issued a Sworn Declaration in this matter, which states as follows:

> 2.    I began employment with the City of Philadelphia Register of Wills Office on January 4, 2016. The Register of Wills at that time was Ronald Donatucci.
>
> 3.    ***During my employment when Ronald Donatucci was the Register of Wills, it was encouraged throughout the Register of Wills Office that employees should donate or contribute to Mr. Donatucci's annual fundraiser that took place on the Spirit of Philadelphia. It was also known that an employee would be disfavored if they did not contribute to this fundraiser.***
>
> 4.    On January 9, 2020, Tracey Gordon became the new Register of Wills.
>
> 5.    Throughout my employment with the Register of Wills under the management of Tracey Gordon, I was continually pressured to make political contributions to Ms. Gordon's numerous fundraisers for her political action committee ("PAC"). I was badgered to contribute to Ms. Gordon's PAC during work hours and off work hours. ***It was common knowledge within the Register of Wills Office that we***

> *were required by Ms. Gordon to support and contribute to Ms.*
> *Gordon's campaign. I felt that if I did not support and contribute*
> *to Ms. Gordon's PAC and re-election campaign that I would be*
> *terminated from my job. Ms. Gordon consistently retaliated*
> *against employees who refused to donate to her fundraisers and/or*
> *PAC. She expressed extreme anger when employees did not donate*
> *to her PAC.*

*See* Sworn Declaration of Parkinson attached hereto as Exhibit "C" at ¶¶ 2-5 (emphasis added).

Similarly, Defendant Gordon's Campaign Treasurer, Keasha Trawick, has sworn that:

> 6.    There was an understanding within the Register of Wills that Tracey
> Gordon expected and pressured employees to make monetary
> contributions to her re-election campaign. There was continual and
> immense pressure from all levels of management that employees
> must participate in contributing and donating to Ms. Gordon's
> campaign. It was almost as if securing donations from Register of
> Wills employees was a job duty of those working under Ms. Gordon.

*See* Sworn Declaration of Keasha Trawick attached hereto as Exhibit "B" at ¶ 6.

Moreover, Plaintiff's termination is not an isolated incident. There have been multiple

lawsuits filed against Defendants for the same pattern of terminating individuals over political

patronage, including but not limited to Defendant Gordon's policy of terminating those who did

not financially contribute to her political reelection campaign. *See, e.g., Boyd v. Gordon, et al.*

(2:23-cv-3640); *Wilson v. Gordon, et al.* (2:23-cv-01814); *Parkinson v. Gordon* (2:23-cv-4004);

*Campion v. Gordon* (2:23-cv-02873). In addition to lawsuits inculpating Defendant Gordon's

administration, there have been numerous lawsuits filed against the current Register of Wills

alleging the same ongoing custom of political patronage. *See, e.g., Ashley v. City of Philadelphia*,

et al. (2:24-cv-6797); *Bilal v. City of Philadelphia, et al.* (2:25-cv-16); *Daniels v. City of*

*Philadelphia, et al.* (2:24-cv-4718); *Harrell v. City of Philadelphia, et al.* (2:24-cv-5821); *Ewing*

*v. City of Philadelphia, et al.* (2:24-cv-5501); *Graham v. City of Philadelphia, et al.* (2:24-cv-

06086).

When considering all the evidence of record in the light most favorable to the Plaintiff, as the non-moving party, there is sufficient evidence to establish a genuine issue of material fact as to whether Defendant Gordon had knowledge of, acquiesced to, and expanded upon a well-established custom at the Philadelphia Register of Wills Office. Therefore, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment fails with regard to the theory set forth in this section.

      iii.       *Defendant Gordon's constitutionally violative policy was the proximate cause of Plaintiff's termination*

In addition to showing the existence of an official policy or custom, plaintiff must prove "that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.* (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Bielevicz*, 915 F.2d at 851.

Here, there is substantial evidence that Defendant Gordon's policy was the proximate cause of Plaintiff's termination. As has been set forth throughout this Response, Defendant Gordon has offered no credible evidence of a legitimate reason for terminating Plaintiff. Indeed, each of the attempted explanations has been riddled with inconsistencies and discredited in discovery. Moreover, Plaintiff, as the nonmoving party, has produced multiple Sworn Declarations from other employees of Defendant Gordon's Register of Wills Office. These witnesses have sworn to have had personal conversations with Defendant Gordon wherein she stated that she terminated Plaintiff because of his refusal to financially contribute to her political reelection campaign. *See* Sworn

22

Declaration of Keasha Trawick attached hereto as Exhibit "B"; Sworn Declaration of Patrick Parkinson attached hereto as Exhibit "C"; Sworn Declaration of Tom Campion attached hereto as Exhibit "D."

Therefore, when considering the evidence of record in the light most favorable to the nonmoving party – *i.e.* Plaintiff – there is at minimum a genuine issue of material fact as to whether Defendant Gordon's policy was the proximate cause of Plaintiff's termination.

### D.    Plaintiff's Wrongful Termination Claim is Well-Supported by Pennsylvania Law, Third Circuit Precedent, and the Evidence of Record

Generally, Pennsylvania has no common law cause of action for wrongful discharge of an at-will employee. *E.g.*, *Geary v. U.S. Steel Corp.*, 319 A.2d 174, 184 (Pa. 1974). However, exception is made "in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Krajsa v. Keypunch, Inc.*, 622 A.2d 355, 359 (Pa. Super. 1993); *see also Geraghty v. E. Bradford Twp.,* No. CV 21-4733, 2022 WL 425940, at *5 (E.D. Pa. Feb. 10, 2022) ("courts may identify a public policy of the Commonwealth "only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it."). To establish a wrongful discharge action under the public policy exception, an at-will plaintiff must establish (1) a clear mandate of public policy is violated and (2) there is no plausible and legitimate reason for terminating the employment. *Geary*, 319 A.2d at 184; *Clay v. Advanced Computer Applications*, 559 A.2d 917, 924 (Pa. 1989); *see also Hunter v. Port Authority of Allegheny County*, 419 A.2d 631 (Pa. Super. 1980) (non-statutory wrongful discharge claim of public employee).

Presently before the Court is the question of whether termination in violation of a public employee's First Amendment right to refuse to financially contribute to his public employer's political reelection campaign fits under the public policy exception. Fortunately, the Third Circuit

has dealt with this issue in *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894 (3d Cir. 1983). In *Novosel*, the plaintiff employee alleged that he was discharged for his refusal to participate in his employer's legislative lobbying efforts and for his opposition to the political stance of the company. *Id*. at 899-900. The Third Circuit held that "the concern for the rights of political expression and association" is a significant and recognized public policy that will support a cause of action for wrongful discharge. *Id*. at 900. While the *Novosel* Court held that an employee of a private company was entitled to a wrongful discharge claim under such circumstances, the Court fashioned its ruling after "the public employee cases." *Id*. ("In dealing with public employees, the [wrongful discharge] cause of action arises directly from the Constitution rather than from common law developments."). As such, the Third Circuit held that "[h]aving concluded thereby that an important public policy is at stake, we now hold that Novosel's allegations state a claim within the ambit of *Geary* in that Novosel's complaint discloses no plausible and legitimate reason for terminating his employment, and his discharge violates a clear mandate of public policy." *Id*. (citing *Geary*, 319 A.2d at 180). The facts here are identical to *Novosel*. The only substantive difference is that the present action involves the termination of a public employee versus John Novosel, who was a private employee of an insurance company. However, the factual difference lends to the favor of Plaintiff. Indeed, Plaintiff's status as a public employee highlights the clear violation of a mandated public policy.

Thus, the only remaining question for this Honorable Court to consider is whether Defendants have demonstrated a plausible and legitimate reason for terminating Plaintiff's employment. *E.g., Geary*, 319 A.2d at 184. As has been discussed throughout this Response, there is no legitimate basis for Plaintiff's termination. As was explained above, Defendants have repeatedly changed their alleged reasoning for Plaintiff's termination, with each attempted

24

explanation being discredited under the most basic of scrutiny throughout discovery. Plaintiff, on the other hand, has produced multiple Sworn Declarations from other employees of Defendant Gordon's Register of Wills Office who have sworn to having had personal conversations with Defendant Gordon wherein she stated her basis for terminating Plaintiff was his failure to financially contribute to her political reelection campaign. *See* Sworn Declaration of Keasha Trawick attached hereto as Exhibit "B"; Sworn Declaration of Patrick Parkinson attached hereto as Exhibit "C"; Sworn Declaration of Tom Campion attached hereto as Exhibit "D."

Therefore, there exists a genuine issue of material fact as to whether Defendants had any articulable, plausible, and legitimate basis for Plaintiff's termination. As such, Plaintiff respectfully submits that there is a genuine issue of material fact as to his wrongful termination claim which must be determined by the jury.

## IV.    <u>CONCLUSION</u>

Plaintiff respectfully requests that this Honorable Court enter an Order in the proposed form denying Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

By: _____         By:    /s/ Daniel J. Savage, Esquire_____
**COHEN, PLACITELLA & ROTH, P.C.**                    **SAVAGE LAW, LLC**
James P. Goslee, Esquire (ID: 203043)              925 Harvest Drive, Suite 300
jgoslee@cprlaw.com                                          Blue Bell, PA 19422
Matthew A. Capacete, Esquire (ID: 330982)           215-310-0510
mcapacete@cprlaw.com                                     215-977-1099 (fax)
Two Commerce Square                                    dsavage@savage-law.com
2001 Market Street, Suite 2900                        *Attorney for Plaintiff*
Philadelphia, PA 19103
215-567-3500
*Attorneys for Plaintiff*

Dated: April 21, 2025

## CERTIFICATE OF SERVICE

I, Matthew A. Capacete, Esquire, certify that I caused a true and correct copy of the foregoing Response in Opposition to Defendant Motion for Summary Judgment to be served upon the following counsel *via* the Court's electronic filing system:

John P. Gonzales, Esquire
Jahlee J. Hatchett, Esquire
**MARSHALL DENNEHEY, P.C.**
2000 Market Street, Suite 2300
Philadelphia, PA 19103
jpgonzales@mdwcg.com
jjhatchett@mdwcg.com
*Attorney for Defendants*

Respectfully submitted,

By: _____

**COHEN, PLACITELLA & ROTH, P.C.**
James P. Goslee, Esquire (ID: 203043)
jgoslee@cprlaw.com
Matthew A. Capacete, Esquire (ID: 330982)
mcapacete@cprlaw.com
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
215-567-3500
*Attorneys for Plaintiff*

By: ___/s/ Daniel J. Savage, Esquire_____

**SAVAGE LAW, LLC**
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215-310-0510
215-977-1099 (fax)
dsavage@savage-law.com
*Attorney for Plaintiff*

Dated: April 21, 2025

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS BARONE, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:23-cv-02821 |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| TRACEY L. GORDON, individually, and | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

### ORDER

**AND NOW**, this _____ day of _____, 2025, upon consideration of Defendants' Motion for Summary Judgment, and Plaintiff's Response in Opposition thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **DENIED**.

BY THE COURT:

_____

**HON. MITCHELL S. GOLDBERG, J.**