EXHIBIT A

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement ("Agreement") is made and entered into by the Board of Ethics of the City of Philadelphia, the Executive Director of the Board, and Tracey Gordon, jointly referred to as "the Parties."

**RECITALS**

A. The Board of Ethics of the City of Philadelphia is a five-member, independent board established by ordinance, approved by Philadelphia voters in May 2006, and installed on November 27, 2006. Pursuant to section 4-1100 of the Home Rule Charter, the Board is charged with, among other things, enforcing the sections of the Philadelphia Home Rule Charter that impose restrictions on the political activity of City employees.

B. Tracey Gordon is a City employee who works in the office of City Commissioner Stephanie Singer. Ms. Gordon's title is Deputy Commissioner of Voter Outreach and Voter Education. Her duties are to increase voter participation throughout the City of Philadelphia. She is supervised in performing these duties by Commissioner Singer. Ms. Gordon has worked for the City since early 2012.

C. Section 10-107(4) of the Philadelphia Home Rule Charter provides that a City employee may not engage in certain types of political activity. The political activity restrictions in the Home Rule Charter ensure that government operates effectively and fairly and that employees are free from improper influences and perform their duties without bias or favoritism for or against any political party, candidate, or partisan political group.

D. Ethics Board Regulation No. 8, which became effective on March 28, 2011, provides a detailed interpretation of the Charter's prohibitions on political activity. Pursuant to Regulation No. 8, a City employee may not engage in political activity while on duty, in City Hall, or while using City resources such as printers or computers.

BARONE 000169

E. Subpart H of Regulation No. 8 provides detailed guidance on the use by City employees of social media such as Facebook. Paragraph 8.19(b) provides:

> An appointed officer or employee may express support or opposition to political parties, candidates, or partisan political groups in posts to a social networking website so long as he or she:
>
> i.    Does not make such posts to the website while on duty, in any City-owned or leased building, property, or office space, or while using any City resources;
>
> ii.    Does not use his or her title or status as a City officer or employee in such posts to the website;
>
> iii.    Does not include in such posts anything that was created by, or links to information created by, a political party, candidate, or partisan political group; and
>
> iv.   Does not suggest, encourage or ask others to make contributions intended for a political purpose.

F. If the Board finds a violation of § 10-107(4) of the Home Rule Charter through an administrative adjudication, it may impose a civil penalty of $300.

G. In early 2012, at the request of the City Commissioners, Board staff provided ethics training to employees of the City Commissioners office. The training covered the Charter's political activities. However, Ms. Gordon did not join the City Commissioners office until after the training. No one at the City Commissioners office told her that she should receive ethics training, nor did anyone give her any information about the Charter's political activity restrictions or the use of social media by City employees.

H. On nine separate occasions from August 10 through September 19, 2012, Ms. Gordon accessed her Facebook page on her City computer and either shared links from or expressed support for or disagreement with the views of candidates or partisan political groups.

I. In early September of 2012, Board enforcement staff received information that Ms. Gordon was using Facebook to make partisan political posts. Enforcement staff initiated an investigation in which they interviewed witness and obtained documents and computer data. Enforcement staff also interviewed Ms. Gordon.

J. At all times, Ms. Gordon fully cooperated with the Board's investigation. After being informed that her use of Facebook violated § 10-107(4), Ms. Gordon immediately changed the settings of her account so that members of the public cannot see her posts. Ms. Gordon also stopped using her City computer to access Facebook for any purpose.

BARONE 000170

K. The Parties desire to enter into this Agreement in order to resolve the matters described herein.

**AGREEMENT**

The Parties agree that:

1. Each time Ms. Gordon accessed her Facebook page on her City computer and either shared links from or expressed support for or disagreement with the views of candidates or partisan political groups, she violated § 10-107(4) of the Philadelphia Home Rule Charter. The aggregate civil penalty for these nine separate violations is $2,700. However, the penalty is reduced to $675 to reflect Ms. Gordon's prompt remedial action and her cooperation with the Board's investigation.

2. Ms. Gordon shall pay the aggregate civil penalty of $X on the following schedule:

   2.1. $200 within 14 days of the effective date of the Agreement;
   2.2. $225 by January 15, 2013; and
   2.3. $250 by April 15, 2013.

3. Payment shall be made by check or money order made out to the City of Philadelphia and delivered to the offices of the Board.

4. Ms. Gordon will attend ethics training within 30 days of the effective date of the Agreement.

5. Ms. Gordon will not access Facebook from her City computer for any purpose.

6. Ms. Gordon releases and holds harmless the Board and its staff from any potential claims, liabilities, and causes of action arising from the Board's investigation, enforcement, and settlement of the matters described in the Agreement.

7. In consideration of the above and in exchange for Ms. Gordon' compliance with all of the terms of the Agreement, the Board waives any further penalties or fines against her for the violations described in the Agreement.

8. The Parties will not make any public statements that are inconsistent with the terms of the Agreement.

9. If the Ethics Board is forced to seek judicial enforcement of the Agreement, and prevails, Ms. Gordon shall be liable for attorneys' fees and costs reasonably expended in enforcing compliance with the Agreement. Fees for time spent by Board staff attorneys shall be calculated based upon standard and customary billing rates in Philadelphia for attorneys with similar experience.

10. The Agreement contains the entire agreement between the Parties.

11. The Parties will submit a signed copy of the Agreement to the Board for approval.

BARONE 000171

12. The Agreement shall become effective upon approval by the Board. The effective date of the Agreement shall be the date the Board approves the Agreement.

13. If the Board rejects the proposed Agreement, presentation to and consideration of the Agreement by the Board shall not preclude the Board or its staff from participating in or considering or resolving of an administrative adjudication of the matters described in the Agreement.

14. If the Board rejects the proposed Agreement, nothing in the proposed Agreement shall be considered an admission by either party and, except for paragraph 13, nothing in the Agreement shall be effective.

By the Executive Director of the
Board of Ethics:

Dated: 11/20/12

_____
J. Shane Creamer, Jr., Esquire

By Tracey Gordon

Dated: 11/15/12

_____

Approved by the Board of Ethics:

Dated: 11/20/12

_____
Richard Glazer, Esquire
Chair

BARONE 000172